UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|
|
LGT ENTERPRISES, LLC, d/b/a LETSGOTICKETS    |    Case No. 1:08-cv-578
and LET'S GO TICKETS,    |
|
Plaintiff,    |    HONORABLE PAUL MALONEY
|
v.    |
|
JUDIAH LUKE HOFFMAN,    |
|
Defendant.    |
|

_____

### Opinion and Order

**Granting in part and Denying in part the Motion to Dismiss for Lack of Personal Jurisdiction;
Determining that the Court Lacks Jurisdiction over the Defendant;
Transferring the Case to the District of Nevada Pursuant to 28 U.S.C. § 1631;
Terminating and Closing the Case**


This is a diversity tort action under Michigan state law.[1]  Plaintiff LGT Enterprises ("LGT")

& defendant Judiah Luke Hoffman ("Hoffman") are online merchants who accept credit cards for

_____

[1]

Federal Rule of Civil Procedure "4(k)(2) allows [federal] courts to exercise personal jurisdiction 'over the person of any defendant who is not subject to jurisdiction of the courts of general jurisdiction of any state *for claims arising under federal law.*"  *Jennings v. A/C Hydraulic A/S*, 383 F.3d 546, 551 n.3 (7th Cir. 2004) (emphasis added); *see, e.g., See, Inc. v. Imago Eyewear PTY, Limited*, 167 F. App'x 518, 521-23 (6th Cir. 2006) (Suhrheinrich, Griffin, Chief D.J. Hood).

For two reasons, Rule 4(k)(2) does not apply.  First, LGT has not asserted any claims against Hoffman which arise under federal law.  Second, it cannot be said that Hoffman is "not subject to jurisdiction of the courts of general jurisdiction of any state."  As discussed below, as a self-declared Nevada domiciliary, Hoffman is clearly subject to the jurisdiction of Nevada courts.

payment online.  These material facts are undisputed:  a third party inadvertently wrote the wrong

bank account number on LGT's application for an account to receive the proceeds of online orders

paid for by credit card; that error caused another third party to deposit nearly $110,000 of LGT's

credit-card revenue into Hoffman's bank account; Hoffman withdrew those funds and spent them;

and at the time Hoffman withdrew and spent those funds, he did not know or believe that the funds

belonged to a Michigan resident.  The parties disagree over whether Hoffman *knew* the funds were

not his when he withdrew and spent them, but that factual dispute turns out to be immaterial.

LGT voluntarily dismissed two defendants, the companies who allegedly caused the

erroneous deposit, whom it had sued for negligence and breach of contract.  That leaves only two

counts (statutory conversion and common-law conversion) against Hoffman, who moves to dismiss

for lack of personal jurisdiction.  For the reasons that follow, the court agrees that it lacks

jurisdiction over Hoffman.  For reasons of efficiency and fairness to LGT, however, the court will

not dismiss the case but instead transfer it to a more suitable district.

**LGT does not claim general jurisdiction, nor would Michigan law permit the exercise of general jurisdiction on this record.**  Michigan statute provides,

> The existence of any of the following relationships between an individual and the
> state shall constitute a sufficient basis of jurisdiction to enable the courts of record
> of this state to exercise general personal jurisdiction over the individual or his
> representative and to enable such courts to render personal judgments against the
> individual or representative.
>
> (1)      Presence in the state at the time when process is served.
>
> (2)      Domicile in the state at the time when process is served.
>
> (3)      Consent, to the extent authorized by the consent and subject to the limitations
>          provided in section 745 [i.e., Mich. Comp. Laws § 600.745].

Mich. Comp. Laws § 600.701.  LGT has not alleged that Hoffman was physically present in

Michigan when he was served with the complaint and summons in this matter, that he was domiciled in Michigan at that time, or that he gave written or oral consent to be subject to the jurisdiction of Michigan courts.   Accordingly, the court determines that general jurisdiction over Hoffman is lacking in Michigan.

**Rather, LGT asks the court only to exercise specific (limited) jurisdiction.  LGT has the burden of making a *prima facie* case that** (1) Hoffman purposefully availed himself of the privilege of acting in Michigan or of causing a consequence in Michigan;[2] (2) LGT's causes of action arose from Hoffman's Michigan-related activities; and (3) Hoffman's acts, or their consequences, must have a sufficiently substantial connection with Michigan to make the exercise of jurisdiction over Hoffman reasonable.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002).  Although this burden is "relatively slight", *State Farm Mut. Auto. Ins. Co. v. Carter*, 2008 WL 5740100, *3 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (quoting *Gagnon v. Emerson Elec. Benefit Health Plan & Trust Fund*, 2001 WL 34399192, *1 (W.D. Mich. Aug. 13, 2001) (Bell, C.J.)), LGT has not carried it.

---

2

The purposeful-availment requirement is meant to ensure that a defendant who is not a citizen (domiciliary) or even a resident of a State is not haled into court there on the basis of random, fortuitous, or attenuated contacts with that State.  *Tindall v. One 1973 Ford Mustang*, 2006 WL 1329168, *3 (E.D. Mich. May 16, 2006) (Battani, J.) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).

Purposeful availment is "something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can properly be regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities."  *U.K. Acquisition Co. v. Lightfoot*, 2006 WL 932417, *2 (Mich. App. Apr. 11, 2006) (p.c.) (P.J. Hoekstra, Wilder, Zahra) (quoting *Jeffrey v. Rapid American Corp.*, 529644 (Mich. 1995)).   "The defendant's contacts with the forum State 'must proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state."  *UK Acquisition*, 2006 WL 932417 at *2 (quoting *BK*, 471 U.S. at 475).

Opposing jurisdiction, Hoffman emphasizes that he lives and operates his business from Nevada, and has not physically been in Michigan in 20 years.  The court notes, but does not decide, that LGT may have a colorable argument on the first element of specific personal jurisdiction, "purposeful availment of the privilege of acting in Michigan or of causing a consequence in Michigan", based on Hoffman's sales (through his interactive website) to Michigan customers and for Michigan events.[3]  But purposeful availment alone is not enough.  LGT must also make a prima facie showing that its claims arise out of Hoffman's Michigan activities, and ultimately it cannot.

Hoffman originally claimed that he never made any sales to Michigan residents, then he stated that he remembered selling eight tickets as a favor to friends.  Generally, Hoffman emphasizes that he does not particularly advertise or appeal to Michigan residents on his website or otherwise, and he contends that his online ticket sales to Michigan residents constitute a negligible portion of his business.  LGT counters with evidence that Hoffman made at least the following three sales: $600 in tickets to an Ann Arbor event in May 2007, then $400 in tickets to a Detroit event in

---

[3]

Hoffman's website is highly interactive, i.e., it is not merely a passive website providing a company's background, contact information, product descriptions, store locations, etc.  His site can be used, and *was* used by Michigan residents during the relevant period to buy tickets to Michigan events and other events.  *See Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 483 (6th Cir. 2003) ("In this Circuit, 'operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'") (quoting *Bird*, 289 F.3d at 874 (quoting *Neogen*, 282 F.3d at 890)).

Moreover, one could argue that by selling tickets to events in Michigan – whether via the website or not – Hoffman was selling a product which, if not "targeted" or restricted to Michigan residents *per se*, would naturally and most likely be purchased by Michigan residents.  *Cf., e.g., Siebelink v. Cyclone Airsports, Ltd.*, 2001 WL 1910560, *5 (W.D. Mich. Nov. 27, 2001) (Quist, J.) (in *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp.2d 806 (E.D. Mich. 2000), "[t]he defendant had sold products specifically targeted to Michigan consumers such as Detroit Lions, Detroit Tigers, and University of Michigan memorabilia.  This satisfied the requirement that the defendant intended to avail itself of business opportunities in Michigan.") (citation omitted).

September 2007, and $360 in tickets to a Michigan customer for a Red Wings game in Nashville in March 2007. But the court need not get entangled in that disagreement, because it is immaterial to a determination of specific jurisdiction.

No matter how many tickets Hoffman sold to Michigan residents or for Michigan events, no reasonable factfinder could find that his withdrawal and spending of LGT's funds "arose out of" those sales. The funds which Hoffman withdrew and spent did not derive from or relate to his Michigan sales. There was neither a conceptual nor a causal relation between the two. If Hoffman had never sold one ticket to a Michigander or for a Michigan event -- indeed, even if he had a policy of refusing sales to Michigan residents or for Michigan events -- the dismissed defendants' use of the wrong account number still would have caused LGT's money to be erroneously deposited into Hoffman's account. In turn, Hoffman's ability and willingness to withdraw and spend the funds were nowise dependent on the existence or extent of his Michigan sales.

## BACKGROUND

Plaintiff LGT Enterprises, LLC ("LGT"), founded by Mark DeLaurence in 2006 and doing business as "Letsgotickets" and "Let's Go Tickets", is a ticket broker. LGT purchases tickets to entertainment shows and events and sells those tickets to its customers, who usually use credit cards for the purchase by mail, telephone, and the Internet. *See* First Amended Complaint filed June 18, 2008 ("Am Comp") ¶¶ 10. LGT has an account agreement with non-party Elavon, doing business as NOVA Information Systems ("Nova"), which gathers the credit card information of LGT's customers and either charges the cards itself or sends the information to the credit-card companies to process the charges. *See* Original Complaint filed June 18, 2008 ("Comp") ¶ 9. A ticket broker that applies for an account with Nova is assigned a merchant identification ("ID")number; when a

customer buys the ticket broker's ticket with a credit card, Nova credits the ticket broker's merchant ID number with the appropriate amount.  Comp ¶ 12.

LGT hired former defendants MerchantWarehouse.com, Inc. ("MerchantWarehouse") and Ticket Software doing business as TicketNetwork Direct, Inc. ("TicketNetwork") to help it prepare its application for a NOVA processing account.  *See* Am Comp ¶¶ 10-11.  In January 2007, LGT filled out *most*, but not all, of a Nova account application.  TicketNetwork Program Manager Ann Burke allegedly instructed LGT not to complete the lower portion of the second page of the application, which requests LGT's merchant ID numbers, saying that TicketNetwork or MerchantWarehouse would fill in those numbers.  *See* Am Comp ¶¶ 12 & 14 and Exs. 1 & 2.

TicketNetwork's Burke also told LGT to open a business bank account within one month, and LGT did so.  *See* Am Comp ¶¶ 13 & 15.  LGT gave the business bank account number to TicketNetwork's Burke to forward to MerchantWarehouse.  *See* Am Comp ¶ 15.  Burke advised LGT to call a particular customer-service representative at MerchantWarehouse to make sure that the latter had the correct bank account number.  LGT did so, and MerchantWarehouse forwarded LGT's merchant account application form to Nova; the application had merchant ID numbers filled in.  *See* Am Comp ¶¶ 15-17 and Ex. 3.

After accepting LGT's merchant account application, NOVA sent a monthly statement to Mark DeLaurence as the principal of LGT.  Am Comp ¶ 18 and Ex. 4.  The monthly statement had a "Sales Recap" section (which listed that month's ticket sales through MasterCard, Visa, American Express ("Am Ex"), and Discover) and a "Deposits" heading (which listed groups of deposits and stated the total amount of deposits for the month).  Am Comp ¶ 18.  The statements, however, did not specify how much money each credit-card company had deposited.  Am Comp ¶ 18.

In February 2008, a single customer ordered over $5,000 of Eric Clapton concert tickets from LGT, using an AmEx card. *See* Am Comp ¶ 20. The credit-card companies typically deposited money into the merchant's account within 48 hours of the transaction, but LGT did not see that amount deposited into its account. Accordingly, LGT's DeLaurence called AmEx and learned that AmEx had indeed deposited the money into an account corresponding to the merchant account number that AmEx had on file for LGT. The account so numbered, however, did not belong to LGT. *See* Am Comp ¶ 19-21. The AmEx representative looked up LGT's actual merchant account number and found that it had made no deposits into LGT's account since the account's inception. *See* Am Comp ¶ 21. After speaking to officials at TicketSoftware and MerchantWarehouse, LGT's DeLaurence learned that the LGT merchant application form that was submitted to NOVA had the wrong merchant account number on it. *See* Am Comp ¶ 22.

In toto, AmEx deposited nearly $110,000 into the merchant bank account of defendant Judiah Luke Hoffman ("Hoffman") that should have been deposited into LGT's account, because AmEx had the wrong merchant bank account number associated with LGT's sales. *See* Am Comp ¶ 23. AmEx reimbursed LGT over $28,000, leaving LGT with about $81,500 in damages. *Id.* ¶ 24.

Hoffman concedes that he withdrew the approximately $110,000 in funds from his account that belonged to LGT, but he claims that "[w]hen I withdrew the funds, I thought that they had been properly transferred to my account, and had no idea that they were supposed to be transferred into an account assigned to Plaintiff or any other Michigan resident." Hoffman's MTD, Ex A, Affidavit of Judiah Luke Hoffman dated October 10, 2008 ("Hoffman Aff") ¶ 5. In correspondence with Hoffman, LGT's principal has responded to this claim with skepticism: "From what I've been told, your monthly sales were small, and my payments to your account should have jumped right out and

said 'something's wrong' here."  LGT's Opp, Ex 4 at 1 (e-mail from Mark DeLaurence to Judiah Hoffman dated Friday, April 4, 2008 at 3:59 p.m.).  The court, of course, intimates no opinion as to whether Hoffman did realize, or reasonably should have realized, that the funds were too large to be attributable to his own credit-card sales.

### PROCEDURAL HISTORY

On June 17, 2008, LGT filed the instant complaint, asserting four state-law claims: common-law and statutory conversion by Hoffman, breach of contract by TicketNetwork, and negligence by TicketNetwork and MerchantWarehouse.  On July 21, 2008, MerchantWarehouse filed a motion to dismiss the negligence claim against it due to lack of personal jurisdiction.  On August 18, 2008, LGT timely filed a brief in opposition to the motion to dismiss.

The court dismissed the complaint without prejudice because LGT failed to allege facts sufficient to establish diversity jurisdiction, giving LGT until October 3, 2008 to file an amended complaint curing the deficiency.  (The court denied without prejudice MerchantWarehouse's motion to dismiss.)  *See LGT Enters., LLC v. Hoffman et al.*, 2008 WL 5753364 (W.D. Mich. Aug. 21, 2008) ("*LGT I*").  LGT timely filed an amended complaint asserting claims under Michigan law for common-law conversion, statutory conversion, negligence, and breach of contract.

On December 12, 2008, the court granted a joint stipulation dismissing TicketSoftware and MerchantWarehouse with prejudice, leaving Hoffman as the only defendant.  Only counts one and two, Michigan common-law conversion and Michigan statutory conversion, pertain to Hoffman.

Based on the allegations in the amended complaint, and absent any motion to dismiss for lack of subject-matter jurisdiction, the court determined that LGT had met its burden of establishing diversity jurisdiction.  *See LGT Enters., LLC v. Hoffman et al.*, 2008 WL 57441802, *2 (W.D. Mich.

Dec. 17, 2008) ("*LGT 2*") (citing Am Comp ¶¶ 2-3 and 9).

In October 2008, Hoffman moved to dismiss the amended complaint for lack of personal jurisdiction. The court denied the motion without prejudice to afford LGT time for discovery regarding Hoffman's contacts with Michigan. *LGT 2*, 2008 WL 57441802 at *3-5 (quoting, *inter alia*, *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir. 1992) ("[s]ummary judgment should not ordinarily be granted before discovery is completed.") and *Plott v. GMC*, 71 F.3d 1190, 1195 (6th Cir. 1995) ("Parties who suffer an adverse summary judgment may base their appeals on the lack of opportunity to discover evidence necessary to establish a genuine issue of material fact.")). After the parties conducted such discovery, Hoffman filed the instant renewed motion to dismiss.

## PERSONAL JURISDICTION in MICHIGAN

Personal Jurisdiction is Essential to a Valid Order or Judgment.

The validity of a court order or judgment depends on the court having jurisdiction over the subject matter and the parties. *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) (Richard Allen Griffin, J.) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) ("*Bauxites*")); *see also Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 427 (Mich. App. 2001) ("Before a court may obligate a party to comply with its orders, the court must have *in personam* jurisdiction over the party."). As noted above, the court previously determined that it has subject-matter, i.e., diversity jurisdiction. Without jurisdiction over the defendant's person, however, the court would still be powerless to proceed to an adjudication, *Days Inn*, 445 F.3d at 903-904 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)), and personal jurisdiction must be analyzed and established separately and independently for each

defendant, *State Farm Mut. Auto. Ins. Co. v. Carter*, 2008 WL 5740100, *3 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (citing *Days Inn*, 445 F.3d at 904 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("*BK*"))); *see also SPEC Int'l, Inc. v. Patent Rights Protection Group*, 2009 WL 736826, *5 n.6 (W.D. Mich. Jan. 9, 2009) (Maloney, C.J.) ("Each defendant is entitled to a separate jurisdictional analysis . . . .").

<u>LGT Has the Burden of Making a *Prima Facie* Showing of Personal Jurisdiction.</u>

As the party seeking to force a non-resident to defend an action in Michigan, it is plaintiff LGT's burden to establish the existence of personal jurisdiction over Hoffman in Michigan.  *See Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439, 450 n.13 (Mich. 1987); *accord Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) ("*Air Products*") (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)), *reh'g & reh'g en banc den.* (6th Cir. Jan. 23, 2008); *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

However, the court determines as a matter of law that LGT need only make a *prima facie* showing of jurisdiction over Hoffman; LGT need not establish such jurisdiction by a preponderance of the evidence.  Hoffman seems to concede that this lower threshold is appropriate here.  *See* Def's Reply at 2 ("In its Response to Hoffman's Motion, LGT has been unable to meet *its burden of making at least a prima facie showing* that this Court can constitutionally assert jurisdiction over Hoffman.") (emphasis added).  In any event, Chief Judge Beckwith thoroughly reviewed the precedents which might seem to impose the higher preponderance standard and explained why it does not apply in situations like this.  Judge Beckwith wrote:

> [Defendant] cites *Serras* for its position that because discovery has been conducted, Plaintiff is required to establish personal jurisdiction over it by a preponderance of the evidence. [Defendant] also cites *McNutt v. General Motors Acceptance Corp. of Indiana*, which holds generally that

> If [plaintiff's] allegations of jurisdictional facts are challenged by his
> adversary in any appropriate manner, he must support them by
> competent proof. And where they are not so challenged the court
> may still insist that the jurisdictional facts be established or the case
> be dismissed, and for that purpose the court may demand that the
> party alleging jurisdiction justify his allegations by a preponderance
> of the evidence.

298 U.S. 178, 189 . . . (1936). Finally, [defendant] cites *Welsh v. Gibbs*, which states that if the court conducts 'a preliminary evidentiary hearing . . . the plaintiff must show by a preponderance of the evidence that jurisdiction exists." 631 F.2d 436, 439 (6th Cir. 1980).

[Defendant's] interpretation of the above cases to mean that the plaintiff's burden increases to the preponderance of the evidence standard where full discovery has occurred but no evidentiary hearing has been held is incorrect. *McNutt* does not discuss the applicable burden of proof in this situation, and *Welsh* plainly states that the preponderance of [the] evidence standard applies if the court conducts "a preliminary evidentiary hearing" but does not indicate that this standard applies when discovery has been completed but no evidentiary hearing has been held. It is clear from the following language in *Serras* that the preponderance of [the] evidence standard applies only where the court actually conducts an evidentiary hearing:

> If the written submissions raise disputed issues of fact or seem to
> require determinations of credibility, the court retains the power to
> order an evidentiary hearing, *Welsh*, 631 F.2d at 439, and to order
> discovery of a scope broad enough to prepare the parties for that
> hearing. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d
> 406, 430 n.24 (9th Cir. 1977). At this stage, the burden on the party
> asserting jurisdiction exists by the same standard that would obtain
> if the matter were deferred to trial: the preponderance of the
> evidence. *Welsh*, 631 F.2d at 439.

[*Serras*,] 875 F.2d at 1214. Finally, the Sixth Circuit left no doubt in *Dean v. Motel 6 Operating L.P.* that the preponderance of [the] evidence standard does not apply where no evidentiary hearing has been held. 134 F.3d 1269, 1271-1272 (6th Cir. 1998). That Court stated that although the plaintiff must ordinarily prove jurisdiction by a preponderance of the evidence, that standard did not apply in the case before the Court "because (although there was discovery) there was no evidentiary hearing on the jurisdiction question." *Id.* The Court stated,

> The lack of such a hearing mandates a specific standard for weighing
> the evidence: . . . the court must consider the pleadings and affidavits
> in a light most favorable to the plaintiff . . . . To defeat such a

> motion, [the plaintiff[ need only make a *prima facie* showing of
> jurisdiction. Furthermore, a court . . . does not weigh the
> controverting assertions of the party seeking dismissal . . . . *Id.*
> (citations omitted)

> The standard employed by the Sixth Circuit is identical to that followed by the
> Federal Circuit, which requires that "[w]hen a motion to dismiss for lack of
> jurisdiction is decided on the basis of affidavits and other written materials, the
> plaintiff need only make a *prima facie* showing, and "if the parties present
> conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."

*Bradford Co. v. Afco Mfg.*, 560 F. Supp.2d 612, 618 (S.D. Ohio 2008) (quoting *Deprenyl Animal*

*Health Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir.2002)).

<u>This Court Must Consult Both State and Federal Law in Analyzing Personal Jurisdiction.</u>

To exercise personal jurisdiction over Hoffman with regard to these conversion claims, "the

court must be satisfied that Michigan law would authorize this state's courts to exercise jurisdiction,

and the exercise must comport with the Due Process Clause of the United States Constitution." *State*

*Farm Mut. Auto. Ins. Co. v. Carter*, 2008 WL 5740100, *4 (W.D. Mich. Oct. 28, 2008) (Maloney,

C.J.) (citing, *inter alia*, *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006); *see also Aaronson*

*v. Lindsay & Hauer Int'l, Ltd.*, 597 N.W.2d 227 (Mich. App. 1999).

<u>Does Michigan Law Authorize Jurisdiction over Hoffman Regarding these Claims?</u>

The court first considers whether Michigan law authorizes a court in Michigan to exercise

jurisdiction over Hoffman in these circumstances. *See Perry Drug Stores v. CSK Auto. Corp.*, 93

F. App'x 677, 680 n.6 (6th Cir. 2003) (Siler, Daughtrey, <u>N.D. Ohio D.J. Aldrich</u>) ("A district court

has jurisdiction over any defendant that 'could be subjected to the jurisdiction of a court of general

jurisdiction of the state in which the district court is located.'") (quoting FED. R. CIV. P. 4(k)(1)(A)).

Michigan's long-arm statute governing "limited", i.e., specific jurisdiction over an individual

provides:

The existence of any of the following between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1)     *The transaction of any business within the state.*

(2)     *The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.*

(3)     The ownership, use or possession of real or tangible personal property situated within the state.

(4)     Contracting to insure a person, property or risk located within this state at the time of contracting.

(5)     Entering into a contract for services to be rendered or material to be furnished in the state by the defendant.

(6)     Acting as a director, manager, trustee or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7)     Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

MICH. COMP. LAWS § 600.705 (emphasis added).  For purposes of MICH. COMP. LAWS § 600.705(1), the defendant's transaction or commission of the "slightest act of business in Michigan" suffices to give the state courts statutory authority to exercise limited personal jurisdiction.  *See Action Freight Servs., LLC v. Thorne*, 2007 WL 1830783, *4 (E.D. Mich. June 22, 2007); *cf. Neogen Corp. v. Neogen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (so interpreting the "transaction of any business" phrase in the analogous personal-jurisdiction statute for corporations, MICH. COMP. LAWS § 600.715(1)) (quoting *Lanier v. Am. Bd. of Entodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971))).

-13-

Technically, the federal constitutional issue does not arise until and unless the court first determines that a defendant is subject to jurisdiction over the applicable Michigan long-arm statute. *Carter*, 2008 WL 5740100 at *5 (citing, *inter alia*, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). But with a possible exception not applicable here,[4] the reach of the Michigan long-arm statute is coterminous with the jurisdiction permitted by the federal Due Process Clause. *Carter*, 2008 WL 5740100 at *5 (citing, *inter alia*, *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 943 F.2d 1174, 1176 (6th Cir. 1992)). Thus, this court need only determine whether the exercise of jurisdiction over Hoffman in these circumstances would comport with his rights under the Fourteenth Amendment Due Process Clause. *Carter*, 2008 WL 5740100 at *5 (citing, *inter alia*, *Michigan Coalition*, 943 F.2d at 1176).[5]

---

[4]

As a Sixth Circuit panel has explained,

It has been suggested that, in certain circumstances, the Michigan long-arm statute may not extend to the limit permitted by the federal Constitution. *See, e.g., Theunissen v. Matthews*, 935 F.2d 1454, 1462 (6th Cir. 1991); *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 n.4 (6th Cir. 1989)). These cases, however, involve situations where a Michigan plaintiff's injuries occur out of the forum state (and sometimes out of the country), but where the defendant still has some minimal contact with Michigan.

*Mott v. Schelling & Co.*, 1992 WL 116014, n.1 (6th Cir. May 29, 1992) (p.c.) (Boggs, Norris, Contie). Here, by contrast, it is undisputed that LGT should be deemed to have suffered the injury – the alleged conversion of its funds – in Michigan, where it is incorporated and maintains its principal place of business.

[5]

In any event, Hoffman does not seem to deny that the Michigan long-arm statute authorizes a Michigan court to exercise jurisdiction over him on these causes of action. As LGT writes,

Mr. Hoffman does not dispute that Michigan's long-arm statute applies to him, for good reason. [citing MTD at 8-10] Mr. Hoffman's actions caused consequences in the state, [MICH. COMP. LAWS § 600.705(2),] and the evidence shows that he has transacted business within the state [MICH. COMP. LAWS § 600.705(1)]. * * * [T[he

Exercising Jurisdiction over Hoffman on these Claims Would Offend Federal Due Process

Under the federal Due Process Clause, "'[p]ersonal jurisdiction analysis focuses on the fairness of forcing a defendant to defend an action in a given forum . . . .'" *Days Inn*, 445 F.3d at 904 (quoting *In re Lewis*, 389 F.3d 735, 739 (6th Cir. 2005)).  As a nonresident defendant, Hoffman's amenability to a Michigan court's jurisdiction depends on "whether he conducted himself so that he could 'reasonably anticipate being haled into court" in Michigan.  *Days Inn*, 445 F.3d at 904 (quoting *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001) (quoting *World-Wife VW Corp v. Woodson*, 444 U.S. 286, 297 (1980))).

Put another way, LGT must show that Hoffman has "'certain minimum contacts with [Michigan] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Air Products*, 503 F.3d at 549 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))); *see also Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 427 (Mich. App. 2001) ("The constitutional touchstone of a due process analysis with respect to personal jurisdiction is whether the defendant purposely established the minimum contacts with the forum State necessary to make the exercise of jurisdiction over the defendant fair and reasonable.") (citing *Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439 (Mich. 1987) (Robert P. Griffin, Justice)).

Depending on the type of contacts between a defendant and the forum State, personal jurisdiction can be either general or specific.  *Air Products*, 503 F.3d at 549-50 (citing *Reynolds v.*

---

injury occurred in Michigan.  LGT is located in Michigan and would have received the money if not for Mr. Hoffman's conversion.  LGT could not use the money to pay its bills, property taxes, Michigan businesses, or deposit it in its bank.

P's Opp at 5 (citing Exs. 4 & 6 regarding Hoffman's Michigan ticket sales).

*Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)). To establish general jurisdiction, LGT would have to show that Hoffman had "systematic and continuous contacts" with Michigan, *Walker Motorsport, Inc. v. Henry Motorsports, Inc.*, 1997 WL 148801, *2 (6th Cir. Mar. 31, 1997) (citing *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 445-47 (1952) and *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996))[6], which is "a fairly high standard", *Kinda Wood USA, LLC v. MGV Enters., LLC*, 2008 WL 4425528, *8 (S.D. Ohio Sept. 30, 2008) (Sargus, J.).

**LGT asserts only *specific* jurisdiction,** *see* Plaintiff LGT Enterprises, LLC's Brief in Opposition to the Renewed Motion to Dismiss the Amended Complaint ("P's Opp") at 1 ("LGT requests that the motion be denied because this Court has limited personal jurisdiction over Mr. Hoffman because he purposefully acted within the state and intentionally caused an effect in the state from which LGT's cause of action arises."), and the court concludes that it cannot meet all the elements of a prima facie case of such jurisdiction. **To establish specific jurisdiction, LGT has to show that Hoffman** "purposefully directed his activities at residents of the forum [Michigan] . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities . . .

---

[6]

*Cf. Electrolines, Inc. v. Prudential Ass. Co., Ltd.*, 677 N.W.2d 874 (Mich. App. 2003):

The existence of any of the following three relationships between a corporation and Michigan constitutes a sufficient basis [for] a court of this State to exercise general personal jurisdiction over a corporation and render personal judgments against the corporation: (1) incorporation under the laws of this State, (2) consent, or (3) the carrying on of *a continuous and systematic part of its general business* within the state.

*Id.* at 887 (citing MICH. COMP. LAWS § 600.711). For definitions of "systematic" and "continuous" for this purpose under Michigan law, *see Clapper v. Freeman Marine Equip., Inc.*, 2000 WL 33418414, *4 (Mich. App. June 16, 2000) (p.c.) (P.J. Talbot, Neff, Saad), *app. den.*, 624 N.W.2d 186 (Mich. 2001) (table).

."  *Days Inn*, 445 F.3d at 904 (quoting *Neal*, 270 F.3d at 331 (quoting *BK*, 471 U.S. at 472)).

**Hoffman, a resident of Nevada, emphasizes that** he has not physically visited Michigan in about twenty years and that he "never placed ads or operated a website aimed at Michigan customers, and during the entire time he was in the event ticket brokerage business, he sold only eight tickets to Michigan events."  Defendant Hoffman's Renewed Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction filed March 6, 2009 ("Mot.") at 2 ¶ 3 and Ex A ¶4. Even those "isolated sales" were made "as a favor for some friends, and not [as] part of any general attempt to market tickets to Michigan events, or to Michigan residents."  Brief in Support of Defendant Hoffman's Renewed Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction filed March 6, 2009 ("MTD") at 2.

"Finally," Hoffman states, "it is undisputed that Hoffman's removal of funds from his American Express account occurred without actual . . . knowledge that some of these funds were allegedly the property of a corporation based in Michigan."  Mot. at 2 ¶ 3.  Therefore, Hoffman contends,

> because Hoffman did not engage in any allegedly tortious conduct in Michigan, or in any tortious conduct calculated to cause tortious consequences in Michigan, [he] does not have sufficient contacts with Michigan to allow this Court to exercise personal jurisdiction over Hoffman in a manner consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

MTD at 3.  Hoffman is simply wrong to claim that "it is undisputed that Hoffman's removal of funds from his American Express account occurred without actual . . . knowledge that some of these funds were allegedly the property of a corporation based in Michigan."  Both the counts lodged against Hoffman expressly allege that Hoffman "*knowingly, intentionally*, and wrongfully spen[t] for his own use the money that belonged to LGT Enterprises", not merely that Hoffman negligently or

-17-

inadvertently withdrew and spent the money without realizing that it did not belong to him or his company.  *See* Am Comp ¶ 27 (Count I, Conversion) and ¶ 30 (Count II, Statutory Conversion under MICH. COMP. LAWS 600.2919a) (emphasis added).  Because LGT is opposing a Rule 12(b)(2) motion to dismiss, the court is obligated to construe the amended complaint in the light most favorable to LGT and to accept all of LGT's factual allegations as true at this stage.  *Williams v. Firstplus Home Loan Owner Trust 1998-4*, 310 F. Supp.2d 981, 990 (W.D. Tenn. 2004) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  Doing so, one might conclude that LGT has at least a colorable argument on the first element of personal jurisdiction, "purposeful availment of the privilege of acting in Michigan or of causing a consequence in Michigan", based in part on Hoffman's sales to Michigan customers and/or sales for Michigan events (arguably "acting in Michigan") and/or on the harm caused to LGT in its Michigan home ("Causing a consequence in Michigan").

But purposeful availment alone is not enough.  **LGT must also make a prima facie showing that its conversion claims "arose out of" Hoffman's Michigan activities.[7]  It cannot do so.**

As both sides agree, *see* P's Opp at 11 and Def's Reply at 3, the second prong of the federal due process test does not require that the causes of action formally "arise from" Hoffman's contacts with the forum; rather, it requires only that "the cause of action, of whatever type, have a substantial

---

[7]

*See, e.g., TC Logistics, Inc. v. Trucking Start-Up Servs., LLC*, 2008 WL 623809, *5 (W.D. Mich. Mar. 4, 2008) (Bell, C.J.) ("The alleged copyright infringement was on the Defendant's websites and those same websites offered the Michigan fuel permits, trip permits, and incorporation services for sale.  As the purpose of Defendant's websites is to sell Michigan fuel permits, trip permits, and incorporation services, along with services for other states, the alleged infringement is connected with Defendant's contacts with Michigan.").

connection with the defendants' in-state activities." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.

2002); *see also Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.

1989) (citing *So. Mach. Co. v. Mahasco Indus., Inc.*, 401 F.3d 374, 384 n.27 (6th Cir. 1968)).[8]

But LGT has not shown any "substantial connection" between Hoffman's withdrawal and

use of its funds and Hoffman's Michigan business activities.  As Hoffman points out, Def's Reply

at 4, LGT's complaint does not accuse Hoffman of any wrongdoing *in connection with its sales to*

*Michigan residents or events.  Contrast Assured Source ASO, LLC v. F.J. Scaime Const. Co., Inc.*,

2008 WL 4104468, *4 (E.D. Mich. Sept. 4, 2008) ("Scaime [a New York corporation with principal

place of business in New York] agreed to reimburse Assured[,] which [Scaime knew] involved

sending monies from New York to Michigan.  As to the second factor regarding the cause of action,

Assured's claims against Scaime also arise directly from Scaime's promise to reimburse Assured

for payroll funds . . . .  Scaime's actions – payment to Assured – directly relate to Assured's

claims."); *Mulcahy v. Cheetah Learning, LLC*, 2002 WL 31053211, *3-4 (D. Minn. Sept. 4, 2002)

(court had specific jurisdiction over copyright infringement claim against out-of-state company; the

company's website had advertised and sold tickets to Minnesota residents for an examination-

preparation course to be held in Minnesota, and the very infringement alleged by the complaint was

the defendant's unauthorized reproduction and distribution of copyrighted exam-preparation

materials).

No matter how many tickets Hoffman sold to Michigan residents or for Michigan events, no

---

[8]

*Accord Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 584-85 (Tex. 2007) (citing our Circuit's *WEDGE* and *Southern Machine Company*, adopting the "substantial connection" test, and discussing disadvantages and flaws of competing tests used by other circuits to determine whether cause of action arises out of nonresident defendant's contacts with the forum State).

reasonable factfinder could find that his withdrawal and spending of LGT's funds "arose out of" those sales even in the looser, less demanding sense of being "substantially connected" per *Bird v. Parsons* and *WEDGE Group*. The funds which Hoffman withdrew and spent did not derive from or relate to his Michigan sales in any way. There was neither a conceptual nor a causal relation between the two. *Cf. E & M Props., Inc. v. Razorgator, Inc.*, 2008 WL 1837261, *4-5 (E.D. Mich. Apr. 23, 2008) (Nancy Edmunds, J.) (granting motion to dismiss for lack of jurisdiction over nonresident Internet retailer, stating, "even assuming that Preferred Ticket's website constitutes activity in the State of Michigan, this cause of action simply did not arise from that activity. Plaintiff did not utilize the website to purchase the tickets at issue here."); *Pride Distributors, Inc. v. Nuzzolo*, 2007 WL 1098286, *5 (E.D. Mich. Apr. 10, 2007) (Denise Page Hood, J.) ("[T]he website was not the basis of the cause of action against Defendant since the Complaint does not allege that the website caused Plaintiff harm; rather, Plaintiff alleges that it was Defendant's . . . cease and desist letter that forms [the] basis of this action.").

If Hoffman had never sold a single ticket to a Michigan resident or for a Michigan event – indeed, even if he had a policy of refusing to sell tickets to Michigan residents or for Michigan events – several essential circumstances would still have obtained, and the key events leading to this controversy still would have happened. First, without regard or relation to Hoffman's Michigan sales, he still would have had an account set up to receive the proceeds of online credit-card purchases, creating the possibility that a credit-card issuer or processing company might confuse his account with LGT's. Second, without regard or relation to Hoffman's Michigan sales, the dismissed defendants' use of the wrong account number still would have caused LGT's money to be erroneously deposited into Hoffman's bank account. In turn, Hoffman's ability and willingness to

withdraw the funds from his account were nowise related to, let alone dependent on, the existence or extent of his Michigan sales or other Michigan contacts (if any).[9] [10]

**On the contrary, it was purely fortuitous that Michigan happened to be the home state of the company whose funds were accidentally deposited into Hoffman's account.** There is no basis for finding that when Hoffman withdrew the money from his own bank account (either online or at a branch in Nevada) and spent it, he intended to harm anyone in Michigan or knew that his actions would harm someone in Michigan. *See Williams v. Langdon*, 2008 WL 2705509, *4-5 (E.D. Mich. July 10, 2008) (Avern Cohn, J.) (even if defendant Hutchings satisfied criteria of Michigan long-arm statute, due process prevented exercise of jurisdiction over him where his only Michigan activity was voting online to expel Williams as an officer of their club; "although Williams resides in Michigan, there was nothing purposely directed at Michigan. As one court has stated, 'it was purely fortuitous that Michigan happened to be the place where plaintiff was located.'") (quoting

---

[9]

Plaintiff LGT's principal, DeLaurence, submits a sworn statement that he "reviewed LGT's records to determine the amount of LGT's sales deposited into Judiah Hoffman's account that came from Michigan events. I determined that approximately $18,000 of LGT's money deposited in Judiah Hoffman's account was from ticket sales to 65 events in Michigan." LGT's Opp to Hoffman's 1st MTD, Ex 6, Affidavit of Mark DeLaurence dated November 26, 2008 ("DeLaurence Aff") ¶¶ 2-3. For purposes of specific jurisdiction, however, the source of LGT's right to the funds is immaterial on this record. The fact that some of the funds originally became LGT's property due to its sales to Michigan residents creates no meaningful nexus between *Hoffman* and Michigan. Whatever the basis for LGT's right to the funds, it cannot change the fact that Hoffman's alleged conversion of those funds did not arise out of *his* Michigan business activities.

[10]

*Contrast Jeske v. Fenmore*, 2008 WL 5101808, *5 (C.D. Cal. Dec. 1, 2008) (California court could exercise specific jurisdiction over Connecticut resident who allegedly committed torts in the course of organizing and publicizing a national beauty pageant) (the Connecticut defendant intentionally and purposely sought out California residents *because they were* California residents, as "but for the Defendant's solicitation of California residents, among other state residents outside of Connecticut . . . the Defendant would not actually have a national beauty pageant.").

-21-

*Lyndecon, LLC v. First Acadiana Fin. Servs., LLC*, 2002 WL 373116, *2 (E.D. Mich. Feb. 28, 2002)

(O'Meara, J.) ("The defendant [a Louisiana corporation which signed a contract in Louisiana to buy

Louisiana restaurants from a Michigan corporation] was not trying to exploit any market for its

products in Michigan; the company presumably would have been pleased to communicate with the

plaintiff wherever the latter wished.").[11] [12]

---

[11]

    *Accord Romeo Entertainment Group, Inc. v. Showing Animals Respect & Kindness, Inc. d/b/a SHARK*, – F. Supp.2d –, –, 2009 WL 764557 (D. Neb. Mar. 20, 2009), where a Nebraska corporate plaintiff alleged that an Illinois corporation called SHARK with regard to claims that it tortiously induced country performer Carrie Underwood and others to cancel previously-scheduled concerts booked by the plaintiff. *Romeo*, 2009 WL 764557 at *1-3. The federal district court in Nebraska held that it lacked specific personal jurisdiction over SHARK because the plaintiff had failed to show "purposeful availment" (prong one) and because exercising jurisdiction over SHARK would offend due process (prong three). *Id.* at *3.

    The Nebraska court distinguished *Calder v. Jones*, 465 U.S. 783 (1984), where defendants knew that the "brunt" of the harm caused by their allegedly libelous *National Enquirer* article would be suffered in the forum state – where the subject lived and worked, and where the publication had its largest circulation. *Romeo*, 2009 WL 764557 at *4. By contrast, the court emphasized, defendant SHARK's alleged tort caused the cancellation only of concerts outside Nebraska. *Id.* at *5.

    Just as Hoffman here did not know or care about the citizenship of the rightful owner of the misdeposited funds until after he withdrew and spent them, *"SHARK was unaware of [the plaintiff-victim]'s state of incorporation until after it committed the alleged acts of tortious interference . . . , and the court cannot infer that SHARK directed its activities to Nebraska simply by virtue of the fact that Nebraska is Romeo's state of incorporation."* *Romeo*, 2009 WL 764557 at *5.

    *Contrast Exhibit Icons, LLC v. XP Cos., LLC*, – F. Supp.2d –, –, 2009 WL 806794, *11 (S.D. Fla. Mar. 26, 2009) (Florida court had specific jurisdiction over Colorado defendants XP Apparel and Mr. Wall with regard to claims of fraud in the inducement and negligent misrepresentation; *knowing that plaintiffs were Florida corporations*, XP and Wall had sent faxes and e-mails to plaintiff, allegedly trying to induce it to enter a contract to be performed in Florida).

[12]

    Having failed to show that its conversion claims Hoffman's arise out of or relate to his Michigan activities – the second element – LGT cannot then satisfy *any* of the three personal-jurisdiction elements merely by pointing to the fact that it suffered the resultant harm in Michigan. Indeed, it is unclear whether such an "effects" argument would enable LGT to satisfy any of the criteria *even if, counterfactually, Hoffman knew when he withdrew and spent the funds that they*

In the face of this fundamental defect on the second element, LGT's case for specific jurisdiction cannot survive.  *See Word Music, LLC v. Priddis Music, Inc.*, 2007 WL 3231835, *5 (M.D. Tenn. Oct. 30, 2007) ("Specific jurisdiction subjects the defendant 'to suit in this forum state only on the claims that arise out of or relate to a defendant's contacts with the forum.'") (quoting *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (quoting *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997))); *The Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677 (6th Cir. 2005) (<u>Cole</u>, Clay, D.J. Hood) ("Specific jurisdiction exists if the defendant's contacts with the forum state are related to the case at hand.").

**This obviates the need to consider whether LGT has made out a *prima facie* case on the first element, purposeful availment,** MTD at 10-15 and P's Opp at 6-10, **or the third element, the "reasonableness" of exercising jurisdiction over the defendant on these claims**, MTD at 15-16 and P's Opp at 11-13.[13] *Cf. See, Inc. v. Imago Eyewear PTY, Limited*, 167 F. App'x 518, 521-23 (6th Cir. 2006) (Suhrheinrich, Griffin, <u>Chief D.J. Hood</u>) ("As we find that the first prong [for personal jurisdiction over a non-resident defendant] is not satisfied, analysis of the second and third prongs is unnecessary.") (citation omitted); *Rice v. Karsch*, 154 F. App'x 454, 464 (6th Cir. 2005) (<u>Forester</u>, joined by Sutton, J., with Daughtrey, J., dissenting o.g.) ("[B]ecause this Court finds that

_____

*belonged to a Michigan corporation.*  As the Michigan Supreme Court has stated, "Proof alone that a non-resident caused an effect in Michigan that was foreseeable does not establish a relationship in Michigan such as to make it fair and reasonable to subject the non-resident to jurisdiction." *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 815 (Mich.1978).

[13]   *Inter alia*, it obviates the need to determine whether Hoffman should have foreseen that his alleged torts would cause harm in Michigan.  In any event, "it is well settled that the mere foreseeability that a consequence might occur in the forum state, by itself, is insufficient for personal jurisdiction under the due process clause."  *Action Freight Servs. v. Thorne*, 2007 WL 1830783, *4 (E.D. Mich. June 22, 2007) (citing *World-Wide VW v. Woodson*, 444 U.S. 286, 296 (1968)).

the Plaintiff-Appellants have not satisfied the first element [purposeful availment], we will not consider the second and third criteria.").  "[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

      <u>LGT's "Public Policy" Argument Lacks Merit</u>

      Finally, the court rejects LGT's argument that "public policy requires this Court to retain jurisdiction because it will ensure the most efficient resolution.  The parties are already here before this Court, and are ready to conduct discovery on the merits of the claim."  P's Opp at 13.  It was LGT's burden to establish that this court has both the statutory and constitutional authority to exercise jurisdiction over Hoffman with regard to these claims.  Having failed to carry that burden, LGT cannot ask the court to deliberately exceed its authority merely because the court might find it "more efficient" to adjudicate the case notwithstanding the lack of jurisdiction.  Any judgment which this court issued in the absence of personal jurisdiction would be at least voidable, and perhaps outright void *an initio*.  Parties may not invoke the nebulous term "public policy" as an invitation for judges to indulge their personal beliefs or desires about what is "efficient" or "fair" when the requested outcome is contrary to binding precedent.  Not surprisingly, LGT has not identified any cases where a court concluded that it lacked jurisdiction but proceeded to the merits anyway under the reasoning it urges upon the court.

      <u>Transfer to an Appropriate Federal District Is More Efficient and Just than Dismissal</u>

      LGT concludes its opposition brief by complaining that "[i]f this Court dismisses the case, LGT will have to file its complaint in another state and delay the resolution of the case."  P's Opp at 13.  This too does nothing to help LGT carry its burden of establishing specific  jurisdiction over

-24-

Hoffman.  If Hoffman lacks relevant contacts with Michigan sufficient to support the exercise of such jurisdiction, this court cannot adjudicate the merits merely to spare plaintiff the expense and inconvenience of filing in a State where Hoffman *is* amenable to suit on these claims.

Nonetheless, there is another option, short of dismissal, which LGT neglects to mention.  By federal statute, "[i]n cases where personal jurisdiction over the defendants is absent, the Court may transfer the case to any such court in which the case could have been brought at the time it was filed if it is in the interests of justice to do so." *Action Freight Servs., LLC v. Thorne*, 2007 WL 1830783, *4 (E.D. Mich. June 22, 2007) (citing 28 U.S.C. § 1631 and *Roman v. Ashcroft*, 340 F.3d 314, 328-29 (6th Cir. 2003)).  "The decision whether to transfer 'in the interest of justice' or to dismiss the case rests within the discretion of the trial court."  *Roberts v. Paulin*, 2007 WL 3203969, *7 (E.D. Mich. Oct. 31, 2007) (quoting *Audi AG*, 204 F. Supp.2d at 1017).

Generally, transfer is favored over a dismissal because a transfer facilitates the adjudication of a dispute on the merits.  *Roberts*, 2007 WL 3203969 at *7 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)).  Unless there is evidence that the plaintiff brought the case in this district in bad faith or to harass the defendant, the interest of justice generally requires a transfer rather than dismissal.  *Roberts*, 2007 WL 3203969 at *7 (citing *De La Fuente v. ICC*, 451 F. Supp. 867, 872 (N.D. Ill. 1978)); *see, e.g., Cronk v. AMR Eagle Holding Corp.*, 2006 WL 3091466 (W.D. Mich. Oct. 30, 2006) (Enslen, J.) (where all three defendants had no physical presence in Michigan, were incorporated in Delaware, and had their principal places of business in the Northern District of Texas, the court transferred the case to that district pursuant to 28 U.S.C. § 1631 rather than dismiss without prejudice as requested by the defendants); *Carefirst of Maryland, Inc. v. Carefirst Urgent Care Ctr., LLC*, 2004 WL 2600579, *2 (W.D. Ky. Sept. 2, 2004) ("The District of Maryland court

held that the defendants had insufficient contacts with the state to support personal jurisdiction and transferred the case, *sua sponte*, to this Court pursuant to 28 U.S.C. § 1631.").  There is nothing in our record to suggest that LGT filed the complaint here in bad faith or to harass the defendant, i.e., knowing or believing that Hoffman was not subject to this court's jurisdiction.  "Because the allegations in Plaintiff's complaint, if true, establish a colorable claim for [conversion], Plaintiff is entitled to [its] day in court."  *Roberts*, 2007 WL 3203969 at *7.

Accordingly, the court will transfer the case to the federal district court in Nevada pursuant to 28 U.S.C. § 1631.  *Cf., e.g., Lyndecon, LLC v. First Acadiana Fin. Servs., LLC*, 2002 WL 373116, *2 (E.D. Mich. Feb. 28, 2002) ("Although this court has determined that it lacks personal jurisdiction over the defendant, it may transfer this action to Louisiana pursuant to 28 U.S.C. § 1406.") (citing *Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969)).  There is no question that the Nevada courts have jurisdiction over Hoffman with regard to these claims, as he is admittedly domiciled there.  "In *Milliken v. Meyer*, 311 U.S. 457 . . . (1940), the Supreme Court made clear that a State has jurisdiction over those domiciled within its borders . . . ."  *Flynn v. Greg Anthony Const. Co., Inc.*, 95 F. App'x 726, 739 (6th Cir. 2003) (Moore, K., with Siler, J., concurring in pertinent part).[14]

**ORDER**

---

[14]

The court also recognizes the possibility that if it dismissed the complaint, LGT might face a statute-of-limitations bar when it sought to re-file in Nevada.  *See generally Tillman v. Great Lakes Truck Ctr., Inc.*, 742 N.W.2d 622, 623-24 (Mich. App. 2007) (discussing statute of limitations governing conversion claims).  The desire to avoid even the possibility of such an unjust outcome counsels in favor of transfer rather than dismissal as well.  *See Jones v. Herbert Kannegiesser GmbH*, 2006 WL 3240710, *1-2 (W.D. Mich. Nov. 7, 2006) (Miles, J.) (collecting cases, including *Callejo v. RTC*, 17 F.3d 1497, 1501 (D.C. Cir. 1994) (transferring case in the interest of justice to "avoid any statute of limitations problems petitioners might otherwise encounter")).

Hoffman's renewed motion to dismiss the amended complaint for lack of personal jurisdiction [document # 41] is **GRANTED in part** and **DENIED in part**.

The court **HOLDS** that (1) this court lacks jurisdiction over Hoffman in connection with LGT's conversion claims and (2) Nevada courts may exercise general jurisdiction over Hoffman.

This case is **TRANSFERRED** to the U.S. District Court for the District of Nevada.[15]

A separate judgment will issue.[16]

**IT IS SO ORDERED this 14th day of May 2009.**


                                      /s/ Paul L. Maloney          
                                        Honorable Paul L. Maloney
                                        Chief United States District Judge

---

[15]

As Judge Quist has explained,

> In *Christianson*, the Supreme Court counseled that in a case . . . where two coordinate courts' divergent views could potentially subject the parties to a jurisdictional "ping-pong" match, the transferee court should accept the transferor court's transfer decision under the law of the case doctrine "if the transferee court can find the transfer decision plausible."

*Griswold v. Potter*, 2003 WL 23941714, *5 (W.D. Mich. Oct. 15, 2003) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 819 (1988)).

[16]

If this order is appealable, our Circuit will review *de novo* the determination that this court lacks jurisdiction over Hoffman. *See Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 429 (6th Cir. 2006) (Boggs, Gibbons, Griffin) ("A district court's dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is reviewed *de novo*.") (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)).

The Circuit would apply only abuse-of-discretion review, however, to the decision to transfer rather than dismiss the complaint. *See Stanifer v. Brannan*, – F.3d –, –, 2009 WL 1107910, *1 (6th Cir. Apr. 27, 2009) (Daughtrey, Gibbons, E.D. Mich. D.J. Zatkoff).